All right, we're going to hear the first case, Bostic v. Schaefer. And Mr. Oakley, I think you lead off. Thank you, Judge Niemeyer. Good morning. May it please the Court, I am David Oakley and I represent George Schaefer in his official capacity as the Norfolk Circuit Court Clerk. This is an appeal from a district court order, which is a broad and sweeping order and a dramatic departure from existing law. In fact, for the appellees to win here today, to win on appeal, they must show doctrinal change in Supreme Court jurisprudence. However, there has been consistent application of the law when it comes to the laws dealing with persons based upon their sexuality, and specifically, laws dealing with same-sex marriage has been consistent application of the law from the Supreme Court in several respects. First, dating back over four decades to Baker v. Nelson, a state refusing to recognize same-sex marriages does not violate the 14th Amendment due process or equal protection clauses. Second, laws based upon a person's sexuality are only entitled to rational basis review. Third, the states have the near-exclusive right, power, and ability to define what is marriage and to regulate marriage. And finally, number four, is when it's an issue of important societal interest and it's part of the public debate, then the court should defer to the democratic process and the fundamental rights of the voters. And that's where I'd like to start my argument is with the case of Schuett v. Let me ask you this, did the Supreme Court have decided Windsor had left Baker intact? Yes, I believe the court in Windsor, by specifically not addressing Baker, had left it intact. In the Second Circuit Court of Appeals, the Second Circuit specifically found Baker was no longer controlling law. And on appeal to the Supreme Court, the parties asked the Supreme Court to again address Baker and decide whether it was controlling. And there was a small amount of argument, an oral argument over that discussion. But the Supreme Court in its final opinion did not address Baker. And in fact, Windsor is consistent with the holding in Baker. And so Baker still remains controlling. But the case of Schuett v. BAMN is when a matter is part of the public debate. It's best left for the states to decide and allow the democratic process to continue. Because the states can continue to develop the rights of their citizens. And obviously... Of course, that has been well recognized. And the court is very much interested in leaving issues like this to the states, I believe. But, and this is a big but, the states must conduct themselves in accordance with the overall structure, the design of the Constitution so that even if you leave a decision to the states, the states still can't trample rights that are protected in the 14th Amendment. And that really is the issue that we have here is whether this becomes a constitutional issue of magnitude or whether this is a democratic issue that's resolvable by the states. You're absolutely correct. The states cannot create a law that's otherwise constitutional. And the example that the court gives in Windsor is Loving v. Virginia, which was decided on invidious racial discrimination grounds. And at the time that Loving was decided, racial discrimination laws that were based upon that for a long period of time had already been subject to strict scrutiny. And that's a different situation from the case we have here, where laws that deal with persons based upon their sexuality or laws dealing with same-sex marriage do not have that long history of receiving strict scrutiny. And the Marshall Newman Amendment in 2006 was passed by 57% of the voters. That was over 1.3 million voters in Virginia chose to reaffirm that the traditional definition of marriage would stay. And Justice Kennedy tells us that there are competing interests here. There's the individual liberty interest that's being asserted, but there's also the fundamental rights of the voters. And if society changes its views, the democratic process is still there, and the Marshall Newman Amendment certainly can be unwound by the voters again. The appellees here, they argue that not recognizing their relationships as qualifying the same-sex marriage qualifying for the fundamental right of marriage is demeaning. However, if we look at the reasoning of Justice Kennedy, what's equally, if not more, demeaning is to presume that the voters of the Commonwealth are incapable of deciding an issue of this importance and that their votes are to be ignored. Well, he gives you a little bit and he takes a little bit away in his opinion. As you know, he also spends a fair amount of time talking about the rights of the states that resolve this type of question. And then he goes on to talk in some respects in language that would not be totally useful to your cause. You're absolutely correct. However, the Shewitt case certainly is consistent with prior opinions from the Court, and it merely enhances the discussion in Windsor, which itself is based upon federalism and letting the states continue to decide the issue of marriage. Because Windsor, one of the most important lessons out of many that we learned from Windsor is that the regulation of marriage is almost the exclusive province of the states. Back to Judge Niemeyer's point. Yes. In Windsor, they kind of gave short shift to the argument of federalism and they went on and emphasized the due process and equal protection. They did go on to do a due process analysis. However, it was still couched in the idea that this was federalism and that it was the state. The state of New York had specifically gone forward and made that recognition of same-sex marriages and given those marriages to the people of New York, but then it was taken away by the federal government. The federal government, by passing Section 3 of DOMA, the federal definition, took away that right from those citizens. And the law was found to be one of an unusual character because it did take away those rights from the voters. Windsor tells us that regulating marriage not only is it reserved to the states, but specifically the definition of marriage is the foundation of the state's broader authority to regulate the subject of domestic relations. And the notion that the states can define marriage how they choose, at the time Windsor was decided, there was really only two ways that states had defined marriage. That's either the traditional historical sense of a man-woman marriage or this newer version of recognizing same-sex marriages. And so Windsor, by specifically saying that the states have that foundation to be able to define what marriage is, they could have said that they have to define it to include same-sex persons, that that's a fundamental right, but they chose not to do so. Do you agree that marriage has been described as a fundamental right? Absolutely. Loving V. Virginia describes it as a fundamental right. However, with the exception of Windsor, every single Supreme Court case that has dealt with the fundamental right of marriage has only been between one man and one woman. So it's presumed that that fundamental right is only the traditional notion of marriage unless the states choose, as they did in Windsor, the state of New York did in Windsor, the states choose to expand that definition to include same-sex couples. So the fundamental right to marry, is that an individual right? It is an individual right, but it's also a right of the pairing of the couple. How could it be that the essence of the right to marry is an individual choice to marry the person that they choose? Isn't that the essence of the right? Correct. Just like in Red Hill. Do you agree with that? Yes, just like in Red Hill. But then how do you then shift over and say, now when you defined it, it now becomes coupled with someone? It's choice, individual choice. It's autonomy. And you agree, it's one of the most important decisions and rights that we have in America. It is an extremely important decision and it is an individual right. And how can Virginia define it to a point that its fundamental essence is unrecognizable? That's where I would disagree. It's not unrecognizable. It's the way that marriage has been defined throughout the centuries. Marriage has been defined throughout the centuries? As being between one man and one woman. For marriage, it's for the people, but the people aren't for marriage. I mean, you admit that marriage existed before government did, correct? Yes. But the whole idea is choice and people making decisions. And you say that you could define it any way the state wants to? The state, as long as it's otherwise constitutional, that they're not placing an additional barrier on the right to marriage, such as the invidious racial discrimination in Loving v. Virginia or the prohibition on persons who owe child support in the Zablocki case. Child support? Or the Turner case. Pardon? Or the Turner case involving inmates. Correct. That was another situation which actually was decided on rational basis review because the court applied a lower level of scrutiny because it was dealing with penological interests. Yet prisoners could marry. Correct. Prisoners are allowed to marry. And that does not change because in the Turner case... So you could be in prison, the ward of the state, and you can make a commitment to love and cherish someone, and the state could not prevent that. Absolutely. And there's numerous... Yet a person, because of a person's sexual orientation, they don't have that right in Virginia? There are numerous interests in marriage. Love and commitment are certainly personal interests in marriage. However, the governmental interest in marriage is... What is the governmental interest in marriage? The governmental interest in marriage, particularly here, is to steer the procreative potential of opposite-sex couples towards the notion of marriage in order to protect the children. And counsel for... Protect the children? ...Clerk McQuig is going to address that further, but... Sounds like it's a totalitarian system where people are baby makers and you get married for the interest of the state. Do you require married people to have children? Absolutely not. Do you ban 90-year-old couples from getting married? Do you ban 90-year-old couples from getting married? Judge Greger, absolutely not. Why not? Because you can't. There would be no way to constitutionally put a procreation requirement on marriage. However, it's still a legitimate governmental interest. You said there's no way the Constitution put a procreation requirement on marriage. Did you say that? Yes, Judge. Okay. And if we are going to... So how is that a legitimate interest that Virginia profits in now, procreation and child center? I'm sorry, can you repeat the question? Isn't that the rational basis that you're proffering to the court? Absolutely. However, it's not our burden. It's not the government's burden to prove the rational basis. It's the plaintiff's burden, but that is one of the many rational basis that have been proffered by the parties and by the amicus. But your rational basis must have some reasonable connection with what you portend to achieve, correct? Correct. And that rational basis, it's not irrational to know and to assume that only opposite sex couples have the biological potential to have a child. That's the only pairing that potentially could have an accidental pregnancy. So it's the state interest to protect children in those sort of situations. And one of the other issues that we do need to address is defining the asserted liberty interest here. The appellees certainly want to argue that marriage, the broader definition or the broader fundamental idea of marriage is the asserted liberty interest. However, Glucksberg, the Washington v. Glucksberg case tells us that the asserted liberty interest must be carefully described and then you have to look to the history and tradition to see if that asserted liberty interest is deeply rooted for it to be a fundamental right. And same-sex marriage, obviously, that is the careful description of the asserted liberty interest here. And it certainly does not have deep roots in America's history and tradition. The Supreme Court in Windsor recognized that only until just a few short years ago, nobody would have considered same-sex marriage even to be a possibility. And indeed, just the last few years, the current count is 17 states now permit same-sex marriages. However, the majority of states, 33, still do not recognize same-sex marriages. And so there is not... If anything was true and loving, nobody would have considered interracial marriages in Virginia in the 1920s, 30s? You're absolutely correct, sir. However, there is a history of prior to the Jim Crow era laws, the anti-miscegenation laws, the idea of interracial marriage was not prohibited. It still fit within the fundamental right of marriage, the idea of a man-woman marriage. And before Virginia passed those affirmative anti-miscegenation laws, it might not have been the social norm, people certainly could have married and indeed did marry across racial lines. Pocahontas married John Rolfe in the early 1600s and their marriage wasn't declared unconstitutional. And it appears I am running short of time here. And so in conclusion, the appellees do have a heavy burden here. And they ask that this court set aside the public debate and the democratic process in favor of a policy determination by this court. And marriage is a fundamental right. But the voters of Virginia have spoken. They chose not to expand that right to include same-sex couples. And the binding precedent of Baker v. Nelson has not been altered in the last four decades. Let's talk about that Baker v. Nelson. Wasn't that a summary dismissal? It was a summary dismissal. And that you want to carry it away as you decide? Absolutely. And I don't think that anybody here disagrees that a summary dismissal by the Supreme Court is a binding decision on the merits. However, the appellees argue that there's been a doctrinal change in the Supreme Court jurisprudence. And they cite the three cases for that proposition. That's the Windsor case, the Lawrence case, and Romer v. Evans. And those cases are not a doctrinal sea change, as the Solicitor General points out. Instead, they are a consistent message from the Supreme Court. Each one of those cases deals with persons based upon their sexuality. To some extent. And each one of those cases applies rational basis review only. So it is a consistent message from the Supreme Court. And it has not changed. I believe I'm out of time. Thank you very much. Thank you, Mr. Oakley. Mr. Nimitz? Pull the mic up to me. Good morning. Good morning, and may it please the Court, Austin Nimitz, on behalf of the intervener, Michelle McQuig. Before I address the three primary points I want to address this morning, I want to put this case in context. This case arises amidst a great debate in our nation right now over the true essence and meaning of marriage. And this Court to decide this case does not need to take sides in that debate. It only needs to determine whether the answer to that debate is dictated by the United States Constitution or whether the people are free to decide it. The first point in this regard that I would address is that the right ascribed is the right to enter into the union of husband and wife. That is the fundamental right on the table. And all of the Supreme Court's historic cases, every single one of them, dating back to the Murphy case in the 1800s all the way up into the modern era, support the fundamental right to enter into the union of husband and wife, a fundamental right that is inextricably linked to procreation. And this even includes, for example, the case of the Turner case, which is a case that I mentioned a little bit ago. A key point in the Turner case, the inmate case, was that the Supreme Court, Justice O'Connor specifically recognized that inmates are expected to be released and they are expected to consummate marriages that they will enter into. And in the very next paragraph, I think this is a really important point about Turner, is the Supreme Court distinguished it from a case called Butler, which was a summary affirmance from a case out of the Southern District of New York where a prisoner was denied the right to marry because he was incarcerated for life with no possibility of parole. The distinction between the prisoners in those two cases is that one was expected to get out and consummate his marriage, reaffirming the procreative link to the fundamental right, and one was not and thereby denied the fundamental right. And that important part of Turner cannot be overlooked. And even in the Skinner case, he recognized that the procreative right of this inmate that would be implicated by the sterilization did implicate his fundamental right to marry. And I think also implicitly recognizing the idea that this inmate in Skinner would get out. He was not incarcerated for life without prison. I think his crime was robbery. So all of the cases about the fundamental right to marry support the right to enter into the union of husband and wife. And that has been affirmed by the Supreme Court in a multitude of cases, to involve a union between husband and wife. Judge Floyd, you asked about whether the Supreme Court can decide Windsor without addressing Baker. And I agree with my co-counsel that they absolutely can. And I want to make this point about Baker, and I think this is important. The reason this court should lend credence to Baker is not what I say, but what the Supreme Court said. The Supreme Court has been explicit that summary affirmances like Baker remain binding until the Supreme Court says otherwise, until they say otherwise. They said that in the Hicks case, and they said that in the Tolley case. And one of the common errors of all the courts that have addressed Baker since the Windsor decision is that they have refused to acknowledge that fact, that the Supreme Court said it belongs to them, not the lower courts, but only the Supreme Court, to determine that when a summary affirmance like Baker is no longer binding. That's probably pretty evident that you're here in Richmond as a weigh station up 95 to Washington. That very well could be stated. We'll probably have our say, and ultimately this issue will be decided again, I think, by the Supreme Court either out of the Tenth Circuit or our circuit or one of the other circuits that's issuing considering this issue. So acknowledging that, Judge Niemeyer, that the Supreme Court may very well have a say, again, as it pertains to Baker. But we do not believe that the plaintiff's claims that they ascribe fit within the fundamental right to marriage. And the common error, we believe... We know this fundamental right to marriage is language of the Supreme Court, but it's built on a longer recognition of marriage as the core of the family unit, which is a political unit that society does have an interest in recognizing for a lot of good reasons. I mean, every person in this room has as a parent one woman and one man, regardless of his orientation. And a grandparent is one woman and one man of the parents. And that family unit over history has been recognized as stable and has been elevated by requiring a declaration publicly and a contractual relationship in order to promote it. I mean, the Supreme Court in the Maynard case, it talked about marriage being the foundation of family and society. So it seems to me a state might be able to latch onto that and say, we are interested in continuing that. But that said, why couldn't a legislature just as well say, we can think it's in furtherance of the stability of society to recognize the union of same-sex couples and to provide them the same access to economic benefits and to give them recognition to raise the dignity of the relationship. That would be within the scope of the state's authority, too, wouldn't it? It would, Judge Niemeyer. And the Windsor Court expressly recognized that what New York did with its marriage laws was perfectly constitutional. What the Windsor Court did not say is that what New York did was constitutionally required of all the other states. And if that is true, I believe that the Windsor opinion in its entirety becomes meaningless. The essence of the Windsor opinion is that the federal government must defer to the states. That is the essence of the opinion. That's what the Supreme Court concluded. But if the U.S. Constitution already tells us what the outcome is, what is the basis for deference? To what must the federal government defer coming from the states if, in fact, the source of the answer is already the Constitution? The seven pages that the Court spent talking about the state's fundamental authority over the marital relationship? It makes it utterly meaningless if the U.S. Constitution, as the plaintiffs claim, already answered this question. And remember that Windsor was a same-sex marriage case. If there was a time for the Supreme Court to say that the Constitution disposes of this issue, it was then. It was not a time to say that the states possess inherent authority over the marriage. That's the only, I think, rational way to read the Windsor opinion. And so that really answers the question, I believe, before this Court, that the Constitution does not compel the outcome. This is a great debate. There are impassioned people on both sides. Our President has acknowledged that there are people of goodwill on both sides. But the Constitution does not require that Virginia do what New York does or that New York must do what Virginia has done in this particular case. And that really gets into why does Virginia have its marriage laws? What are the rational bases for the marriage laws? Because if this right that the plaintiffs are claiming does not implicate a fundamental right, then we are under rational basis review. And the marriage laws are dependent upon the distinguishing characteristics as the Supreme Court used in the Cleburne case of men and women and man-woman couples and their unique ability to procreate intentionally and oftentimes unintentionally as that may be. The State of Virginia is entitled to recognize as we stated in our brief that 99% of the kids born in this country are the products of man-woman relationships and children are essential to the future of any society. The State of Virginia is legislating at the core here talking about 99% of the offspring and upholding with the marriage laws the idea that men and women bring diversity to parenting, bring the essence of both sexes to the idea of parenting, connecting as best as possible as much as possible children to the mother and the father that brought them into this world and providing stability to the families that are generally producing the next generation. Those are eminently rational concerns that the State of Virginia is entitled to have and they have had them from the very beginning. Virginia became a colony in 1607. The marriage laws are nothing new in Virginia. The constitutional amendment did not change the law. The statutes that the plaintiffs have claimed are unconstitutional that were enacted in 1997 and 2004 are not new to the extent that they affirm Virginia's consistent and always definition of marriage as the union of one man and one woman. I haven't heard either one of you talk about the California couple who were lawfully married under the California law and they come to Virginia and try to get their marriage recognized. What do you have to say about that? Judge Floyd, the claim there rings as I understand it by the plaintiffs only in equal protection and that Virginia violates the Constitution by recognizing some marriages and not others and I would say to this that Virginia and no state has ever been required constitutionally to recognize any marriage from another jurisdiction that the very idea of recognition implicates notions of full faith and credit but more specifically Virginia has always consistently maintained the right throughout its jurisprudence and case law to not recognize marriages that are inconsistent with its public policy and so as far as that is concerned it is consistent and if Virginia has to recognize a same sex marriage from California then it I see my time is on may I finish my answer Judge Meehan? Thank you. It lays waste to the entire public policy so what difference does it make? If Virginia doesn't have to issue the license but it must recognize it from another state it's really an end around Virginia's public policy so it has an interest in upholding its public policy through recognition policies in the same way it would with concealed handgun licenses. I thought your policy was child centered what about the child the children of those marriages they were consummated out of state and legalized and then they come to Virginia what about the children? Judge Gregory there are of course all kinds of children and all kinds of families in the state of Virginia the commonwealth has an interest in all of them Why do you want to deny them all of those warm and wholesome things about marriage? Well specifically because the animating purposes of the marriage laws but I don't think Virginia denies anything to the children of same sex couples any more than it denies to the children of a single mother or a grandfather who is raising a grandson they don't have the rights or benefits of marriage is the commonwealth they can marry the person they want to marry that's the whole point the single mother or single father you just talked about they can marry the person they want to marry correct? They could they cannot marry the person they want to marry the opposite sex person they want to marry is under Virginia law and under another fundamental right they have the right to do that do you think the child loves their parents less because they're same sex parents? Not at all not at all do you think that child wants less the embracement of the dignity of marriage what it offers in the other child? Not at all but if you're concerned about the child why does Virginia rip that from the child? There are as we stated there are three primary reasons why the state of Virginia is involved in the marriage business why does Virginia want to rip that embracement from the child? We're talking about the child you said it's child centered let's go to the core of your rational basis same sex couples do not provide no we're not talking about couples we're talking about children you said that it's child based why do you want to rip that from a child? That's the question and let me try to answer it Judge Gregory same sex couples do not provide the child with both a mother and father and if we want to look at it from the child's perspective Virginia has stated over and over in its public policy that a child is entitled to have a connection to both its legal mother and father the Virginia Supreme Court said that just last year and Virginia accepts the proposition that the two sexes are not fungible something that is a mainstay in the Supreme Court jurisprudence we recognize gender diversity in all kinds of arenas in our social society the value of women in education in the workplace in juries where we administer justice is the state of Virginia really prohibited from saying that we value men and women as parents and role models in our families we don't believe that that is an unconstitutional proposition all right thank you Mr. Payne all right Mr. Olson we'll hear from you next thank you your honor may it please the court I'm Theodore Olson on behalf of the Bostock Plaintiffs Virginia's marriage laws single out for discrimination a class of Virginians according to their      from not only marriage which the Supreme Court does not recognize but also does not recognize and does not recognize the gender of the person that they love which the Supreme Court has said again and again is the most fundamental and important relation in life but prohibit Virginia goes on and prohibits and invalidates any domestic partnership relationship or legal status that approximates quote the design qualities significant or effects of marriage that is what this case is about marriage a fundamental right and it is not let me ask you this I asked this pointed this out a little bit to the your colleague indeed the Supreme Court has elevated marriage to an important relationship and I think one of the problems I had with the briefs in this case is that everybody was using the word marriage to govern to talk about different things different relationships it seems to me what Virginia was trying to do was to recognize the fact that every person in this room is the product of a marriage and that the stability of a family created by those was important to society and of course as we all know every society in history basically has found it so important they have required usually public contracts public declarations and many societies that elevated it to a sacred relationship now that relationship A which is the core of a family and of a family unit as part of society was what Maynard recognized when it said that marriage was the foundation of the family and society that doesn't mean that society and a state can't recognize a different relationship call it relationship B and not until recently has there been a proposal to have that relationship recognized now to call both relationships marriage doesn't make sense if traditionally and historically it's always been thought of to be the core of a family it's now thought to be the state can redefine it and call it marriage but we have two relationships and we now have a new relationship that I think a state can well deserve show respect to by recognizing the same sex relationship which gives a lot of the benefits but it can't create the same family unit that has been recognized through history because it ends it physically ends because the right to have you and you and everybody here cannot happen through the same sex marriage so the state is making a decision we're going to favor marriage by for instance inheritance we're going to let the child inherit from the grandfather or the grandmother we're going to let the child inherit from the parent every state I think has inheritance default inheritance on that basis so there are tax laws that promote benefits for people in a family relationship that can be changed and a state could change it but I don't think it's useful to start comparing the new relationship of a same sex union and the old relation of a heterosexual union these are two different relationships that have totally two different purposes in society and I think it would be it's very positive for you to present strong arguments in the sense that the state increases stability increases the dignity of this new relationship increases the economic benefits but the mix is to play with the language I think well let me answer that in a number of ways your honor in the first place a number of those arguments many of the same arguments were made in the first place but I would strongly dissent from that point of view your honor because the Supreme Court in the Zablocki case went on to say it involved race in that case but it involved marriage in that case and right to marriage is all individuals the loving case is not just an equal protection case it's a due process case  and that marriage is for all individuals the Supreme Court has described marriage as a fundamental relationship in 14 cases now those cases have involved divorce sterilization contraception twice divorce twice abortion maternity leave child care and in the Lawrence versus Texas case the Supreme Court of the United States said persons in a homosexual relationship are not eligible for marriage now what the Supreme Court has said that marriage is all about is liberty association spirituality privacy and no state has ever how far do you want to carry that for instance would we if we were to rule that this is a personal liberty that can't be infringed by a state would you rule then that a man could marry six wives no your honor or could marry his daughter there are justifications the state does have to come forth and it has come forth in previous cases with respect to polygamy statutes that there are overwhelming societal reasons with respect to polygamy and with respect to incestuous relationships what is the heavy interest in interfering with the relationship between a man and three women well the supreme court of the united states has said that it leads to tyranny between men and women and hierarchical society it creates problems with child care child division divorce and a whole number of things like that more fundamentally discrimination on the basis of sexual orientation and gender because as judge gregory was pointing out this is an issue of choice at the last line of the loving decision it said pretty much the same thing that judge gregory was saying that under our constitution the freedom to marry or not marry resides with the individual and cannot be infringed upon by the state yes that was a case about race but subsequent decisions made it clear that the right of choosing your spouse in a marital relationship is an individual choice it's not the right of the state can the state say to a two persons a man and a woman that you have to enter to be married you have to enter into a contractual relationship and publicly declare that relationship can the state do that well the state can regulate marriage in certain different ways and all of the states have done so but what the states have done is they have allowed the procreation the desire to procreate or the willingness to procreate or the ability to procreate a condition of marriage never once in all of those cases that the supreme court procreation is not that's backwards you've got exactly backwards I don't think they've said that what they have recognized is that marriage is the driving force for the procreation sometimes they have been arranged throughout the years but a marriage is a unit that's important to society for a lot of reasons and the state can elevate that importance without saying we're not going to recognize any other relationship that's not even on the table the idea is to support this unit and to give it support through inheritance and to say it creates stability in society with all due respect what the supreme court decided in a number of pages just last June in the Windsor case it talked about families that involve people of the same sex and families of different sexes and it says that if you are excluding from that relationship that you yourself pointed out is so important it's important for tax benefits it's important for child custody it's important for inheritance it's important for welfare it's important for health insurance all of those advantages are being withheld from individuals because they have sexual orientation which is different than heterosexual orientation strict scrutiny and heightened scrutiny is involved in this case because what the supreme court only if we are talking about the relationship that the supreme court has described as a fundamental right that is to enter into the relationship of marriage that has been favored by society for thousands of years the American laws simply recognized what had been in existence literally as long as human memory continues the question is the new relationship that just appeared what 30 years 40 years ago the proposal that we recognize a formal relationship between same-sex people when we do that we are entering into a new type of relationship and I think it would be well worth doing everything you are saying that is to provide economic benefits but you cannot make that union the same as the union that is talked about in the supreme court it is the same then the supreme court in the Windsor decision talked about all the reasons why withholding that relationship all of those benefits and imposing that stigma you are saying that these individuals my clients have a second class relationship they are not entitled to those benefits their children are demeaned by that relationship the united states supreme court said those children are humiliated because they are not in the same status as the people that are living next door so you have a relationship that is exceedingly important because of all the benefits because of what society recognizes and all the damages that are done when you withhold that from a class of persons 14 times or 12 times in the supreme court decision the supreme court in Windsor recognized you are making good policy arguments that 17 states have now bought and my guess is that number will grow in other words states will recognize it for the very same reasons you are talking about but that is a different story than saying relationship A is a relationship in which people in relationship B can participate in the original sense they can have a new relationship that is parallel with less attributes because they can never be the core of this withholding that relationship from same sex individuals does not discourage heterosexual persons from getting married having children remaining married or appropriating in any way whatsoever so the damage is being done without serving what the state says is its purpose don't you think that would be a good argument for a legislature to recognize a same sex union of course it is a good argument for the legislature but fundamentally we are in a court created by article 3 to protect the fundamental rights and the equal protection of the citizens of the United States and we are withholding that benefit that is very very very important most fundamental relationship in life the court said it is an intensely important relationship for withholding that from a class of arch citizens on the basis of their sexual orientation and gender of the person that they love that does grave damage that violates the equal protection clause and it violates the due process clause and you cannot read Loving, Lawrence, Romer, and the Windsor decision and come out any other way. Thank you Mr. Olson. Thank you. Mr. Essex. May it please the court James Essex for the Harris interveners. I'd like to take us to equal protection your honors. I might have overlooked what are the facts of the Harris? I do know the circumstances of the other two couples that are involved in this case and the Harris couple apparently represent a class do they? Yes your honor there are two class representative couples. One of them is a couple that is unmarried in Virginia and another couple that is unmarried in DC but lives in Virginia and wants their marriages respected and they represent respectively two subclasses of all same-sex couples in Virginia about 14,000 couples who cover both the recognition. I was just looking at the individuals I understand there's a class but so we have two couples one living in Virginia and another living in DC. Well actually both living in Virginia your honor. One is unmarried and wishes to marry in Virginia the other is married in the District of Columbia and wants that marriage recognized here. The marriage bans in Virginia violate equal protection on any level of review but we urge this court to hold that government discrimination based on sexual orientation is not entitled to a presumption of constitutionality because applying rational basis review to this law does just that. It says there's a presumption of constitutionality. Instead the court should require government to come forward with an explanation for why in any given instance it needs to rely on and make distinctions based on sexual orientation. Applying a deferential level of review would be inappropriate because in the words of Winsor, those are her own merit and essential qualities. But the Supreme Court did not put a label on the type of security and applied in Winsor. How does Winsor support your argument that heightened security applies in this case? Your Honor, two things. One is you're right that the court in Winsor didn't give a traditional label to the level of review that was applying. There was  cautionary talk about careful consideration and the court could look at that as a heightened review or as the Ninth Circuit did as heightened scrutiny. But regardless of that, the Supreme Court has laid out a series of factors, four factors that the courts have looked at in determining whether a classification used by the government should be considered suspicious or quasi suspect. This court has never applied it to the question of sexual orientation classifications. This is an open issue in this circuit. The prior precedent where the court did talk about this happened prior to   Circuit. I'm not trying to move the Supreme Court toward your position. It is moving toward that position. This court could also apply Windsor and say there are enormous similarities between the Defense of Marriage Act and the marriage bans here. The Defense of Marriage Act is similar. The purpose of DOMA was to ensure that the existing marriages would not be respected by the federal government. Reading Windsor, I confess that it is a difficult opinion to read and to get exactly what is being held. You sense that the main structural thrust is that DOMA was the federal government getting involved in a very important relationship that was the domain of the state and struck it down on that basis. I acknowledge that is not all that clear. That is the sense I get as to why they have        not done that. The equality of right principle is an ancient principle. What is new is our recent recognition that gay people are entitled to the equal protection of the law. That proposition is new because it was recognized in the 19th century. The result here is ineluctable. Let me address the doctrinal issue. The issue of how do you define the fundamental right. Virginia agrees with the plaintiffs in this case that the proper definition is the right to marry, not the right to same-sex marriage. The clerks say what about Glucksburg. It involved the fundamental right to assisted suicide. The Supreme Court said you have to have a careful description of the right. The court said in 700 years of Anglo-American jurisprudence, we can't find that right. They overlooked something critical here. When you look at the case of Justice Scalia, which was the plurality opinion by Justice Scalia in 1986, which only a Chief Justice rank was joined. Maybe we should just say we passed and let the case go on. I think you obviously are going to give it your best shot. That might be the best we can give you. Justice Scalia, in the Michael H. case, he thought the way to do process analysis was to look at the most specific level at which a relevant tradition can be identified. That's the approach you're seeing here. They wanted to define the right to same-sex marriage. There's an obvious answer to that. It's clear that the drafters of the 14th amendment didn't think there was a right to interracial marriage. I think there's a better answer than pointing out loving. The answer you should look at is the discussion of Michael H. in the Casey decision. Casey says we reject Michael H. That's the quote. It's at page 22 of our brief. It's tempting to suppose that the due process clause protects those practices at the most specific level. The court says such a view would be inconsistent with our law. They go on to cite loving and Turner. That's where the doctrinal rubber meets the road. That's why Glucksburg is not controlling. Once you identify the fundamental right, once you do that, you are not then limited to a historical application of that right. That's why loving came out the way it did. That's why Glucksburg had no fundamental right. This is a critical doctrinal point. It's a prominent part of our brief. You don't hear a single answer. Let me touch on the height scrutiny question. You heard the four factors. They are all getting at the same point. Should we be suspicious of laws that discriminate on the basis of sexual orientation? It's a no-brainer. It's only 2003 that the Supreme Court constitutionalized the right to engage in homosexual conduct. It's clear that laws that discriminate on the basis of sexual orientation should be looked at as a no-brainer. It's clear that Virginia's approach is a form of gender discrimination because whether you can marry the person you love is based on your gender and that person's gender. I'm not sure that gets you anywhere. The whole reason Virginia articulates you have to have a family to have a child to create the potential for a child to grow up. You don't need to have a man and a woman married. I'm not aware of any person in the world that is the product of other than a man and a woman. To the extent that procreation is the only basis of marriage. Not the basis. It's a political unit that is a reality that existed as the advancement of society, the increase in society, can only occur by the combination of a man and a woman. That's correct. That's a different question. As of now, scientifically, we don't know where we're headed. As of now, that's a reality. And so the question is, with that reality, society has addressed that as meaningful. So to say we're discriminating against a male or a female because of their gender when we say the relationship can only be a male and a female doesn't make sense. I'm just taking the state where it is. That's what I'm saying to gender discrimination. I think the question is whether you apply heightened scrutiny and I think you do because there is an explicit gender classification. Now, it's conceivable you can satisfy. It takes a male and a female to have a child, to have a family. Virginia's law until 1975 applied to couples who wanted to marry. It was only in 1975 that Virginia came in and said you can't marry a person of the same sex. The point is there's an explicit gender classification and you made this point in the Faulkner versus Jones case. You shouldn't confuse the question of whether there's intentional gender discrimination with the question of whether you apply heightened scrutiny once there is a gender classification on the face of the law. That's my point. You've got to apply heightened scrutiny. On the issue of states' rights, I think the key aspect of Windsor that gets lost in the discussion is the federalism argument at issue in that case was running in parallel and tandem with the due process argument. I disagree with Judge Neumeier with your point that federalism was the predominant theme. When you look at part four of the decision, it's the due process argument that's the basis for the decision. You shouldn't pin my question as to any position, but my observation was simply the court didn't seem to want to have DOMA around. They didn't seem to want to have a federal government getting involved into this. Now, the rationales they used weren't purely, I agree with you, they weren't purely the states' rights. When you get to the holding, the basis, the holding is the DOMA violates the equal protection provision of the Fifth Amendment. My point at the outset was the federalism argument was running parallel to the due process argument. In this case, they didn't want to violate it, and yet we have a due process problem if you do that. Then the question is, what do you do when there's a conflict? That's an easy one because the Bill of Rights trumps federalism, and the Supreme Court tells us that repeatedly. It told us that in Loving. My predecessor in Loving stood up and said for the Supreme Court to strike down a ban on interracial marriage would be the worst form of judicial lawmaking. It's the same argument you're using to define rights of marriage unless it violates the Constitution. That's at page 2691. I would make a distinction, it seems to me, in any kind of legal analysis between a regulation that says one partner in a marriage cannot be African-American, and     because it doesn't work biologically. It seems to me that that argument is wrong. It's not true. It's not true. It's not true. It's not true. The race is benign to the biological issue and sexual, two sexes is not benign to that issue. Many of the discussion really goes to what is the marriage relationship as understood by the Supreme Court. Even at the time of Loving, and I respectfully suggest even that the Court in Loving recognized that marriage between a man and a woman was a fundamental right and they had not anticipated sexual orientation in same-sex marriages. I think we have a brand-new relationship that we have to look at and the question ultimately in my view is whether the Constitution really addresses that or whether we should leave it to the state. Respectfully, Your Honor, it sounds to me like you were trying to put the whole case into what the definition of marriage is and it's not a state-based definition, it's some kind of state-based definition. The Supreme Court is saying that marriage is the foundation of family and society. It's not talking about orientation and so forth. It's talking about the marriage between a man and a woman is the foundation of family and society. And before Loving, there had not been a case involving interracial marriage. The point is you have to apply doctrine. We think we win on heightened scrutiny or strict scrutiny. We also win on the rational basis test because it's simply irrational to think that denying the right to marry the same sex couples is going to make it more likely that opposite sex couples will marry and have children. This issue is compelled by combining Loving on the one hand with Romer and Lawrence on the other and it reminds me of what John F. Kennedy said upon introducing the Civil Rights Act of 1963. Sometimes you look at what you've done and all you can ask is what took you so long to do it. Thank you. All right. I guess we have Mr. Nimitz. Yes, sir, your honor. I'd like to start in my rebuttal first by addressing the arguments on doctrinal developments. I think one additional way to look at the Windsor case and   question earlier, Judge Floyd, is to look at the very last sentence of the opinion where the Supreme Court says expressly that there is no right to marry the same sex. The opinion and the holding itself, both of them, are limited to the situation presented to it. Whether the federal government must recognize what the states give them. It's specifically and expressly cabined the import of that case which is why we don't think it's applicable. The loving case returned marriage to its original common law natural state as the union of husband and wife. I don't think that can be used to support the argument for same sex marriage. This is where Baker is applicable to this court. If there's any question as to whether loving created the fundamental right to marry the person of your choice, the person that you love, Baker cabined that. Baker said five years later this does not raise a substantial federal question. The Lawrence case does not. This is not a substantial federal question. Do you believe that this issue is not a constitutional issue? I don't believe so. I don't think the Constitution How do you ignore the line of cases from the  down? Every barrier that the states impose on themselves in marriage have been struck down. The idea of procreation, Griswold said you can't prohibit married couples from deciding when to have children, contraceptives, divorce, states can't keep people from going to other states and denying divorce, all down the line the doctrine goes on and on. All of these cases, now Romer comes along, you can't discriminate. The question is you can't take a fundamental right and define it to the point where the fundamental right of choice is unrecognizable. You have the right to marry, but no same-sex marriage is not fundamental. I think the way to look at all of those cases, we talk about Griswold, Zablocki, Turner, all of those were state-imposed restrictions on the fundamental right to enter the union of husband and wife. The Supreme Court rightly said you  restrict the union. The argument here is not that the marriage definition limits it. It doesn't go beyond. Every case has been a husband and wife. Like I said, there wasn't a case about interracial marriage until loving. If the court applies Glucksburg, which I think is appropriate, and we have a concrete description that is deeply rooted in the history and traditions, it was not until recently that the idea of same-sex marriage was even up on society. We cannot make the argument that same-sex marriage or the right to genderless marriage is deeply rooted. I don't think Lawrence advances the argument here because Lawrence expressly said it limited the holding there and said that this does not apply to any relationship that the government must confer recognition on. So there's an express limitation there. And Romer, much like Windsor, is unique. And it's unique in this way in that Romer and Windsor dealt with something brand new. It had never before been seen. Romer was in a unique law out of unusual character. The state had never done that before. In Windsor, the federal government had never not deferred to the state. It was something that popped up out of left field. And the Supreme Court said this is unusual and it's unique and it carefully scrutinized that law. That argument cannot be made about Virginia's marriage laws. This is nothing new. Virginia's marriage laws have been the union of one man and one woman for over 400 years. The recent enactments did not change that substance. The point is you are saying that it's procreation that drives this. And child center. You don't claim tradition in 400 years. That's a context but the text of your argument is that it's child centered in procreation. And you would agree that same sex couples can have children. Do you agree? What difference does it make? Children are children. Are you making a difference in terms of children? What are you talking about? The question is can they have children? Yes or no? Not the same way. A couple who adopt you would say you can have children but not the same way. What does that mean? It would make no sense. Would it make sense under the law of Virginia that you would say you are an adopted child? Does that make a difference in the law in Virginia? It does. Once you adopt it, does it make any difference under the laws of Virginia? After you adopt it, does it make any difference whether you are the product of a conception biologically of your parents or adopted? It does not. I guess you are not going to answer my question. Answer my question. Is there any difference under Virginia law once that status is reached? Once the status of adoption is reached? Once you are a legal parent? Let me answer this. The states interest in adoption and marriage are completely different. A lot of children are waiting for foster homes and waiting to be adopted. If you care about children, you want to have more marriages. It is disingenuous in terms of your interest in children. I don't agree with you. Why is it different in terms of same-sex couples having children by adoption or foster children? Are they families? Are they families? Same-sex couples do not further the state's interest in the same way that opposite-sex couples do. As long as they get to the objective of having wholesome homes and families and children, what difference does it make? The state of Virginia believes that the essence of the family does include both men and women. The state believes that gender diversity is essential to its understanding of the family. It doesn't prohibit other people from forming other kinds of families and other relationships. I'm trying to figure out whether to give you or Judge Gregory a ticket. I want to let Judge Gregory continue as long as he finishes his line of questions. Thank you, Judge. I'm trying to have you recognize that you're on borrowed time. As long as Judge Gregory has a further question, I'm requesting you answer it. In Loving, when they went into their home in 1958 in the middle of the night and arrested them, convicted them and sentenced them, gave them probation on the condition they don't have to come back together for 25 years, how long does Virginia ask same-sex couples to come back? Same-sex couples do not exist under the same threat of criminal prosecution that interracial couples did. There's a difference between saying something is criminal and we will prosecute you and the state saying promoting a certain policy while allowing the other things to exist. Virginia does that. After Lawrence, did Virginia remove those statutes off the book about sodomy? I can't answer that, Judge Gregory, but Virginia does not prosecute or exist with a threat of prosecution. I don't think that the Lawrence case has application here because of the express resolution. This is my point about the age of the laws, Judge Gregory, is not that I'm arguing tradition. I'm arguing that there cannot be a credible argument made that Virginia's marriage laws came into existence because of animus. 400 years ago, the argument cannot be made  laws were defined as one man and one woman because of an unconstitutional animus against gays and lesbians. The argument that the laws are not constitutional because they're  Thank you very much. Thank you, Mr. Nimitz. This is obviously an important issue, and I want to thank counsel on all sides for your very elegant and eloquent arguments. I also thank the many people, the audience, which is very full here today for the demeanor, the respect shown to the counsel as is our tradition, and then take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Roger L. Gregory, Henry F. Floyd